**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Dennis M. Penny, II, Appellant.

Appellate Case No. 2013-001554

Appeal From Chesterfield County
Paul M. Burch, Circuit Court Judge

Unpublished Opinion No. 2016-UP-065
Heard November 10, 2015 – Filed February 17, 2016

**AFFIRMED**

Appellate Defender Laura Ruth Baer, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Interim Senior Assistant Deputy Attorney General John Benjamin Aplin, Assistant Attorney General Mark Reynolds Farthing, and Assistant Attorney General Mary Williams Leddon, all of Columbia; and Solicitor William Benjamin Rogers, Jr., of Bennettsville, for Respondent.

**PER CURIAM:** Dennis M. Penny, II appeals his conviction for burglary in the second degree, arguing (1) the trial court should have directed a verdict of acquittal because the State did not present evidence that Penny entered the victim's dwelling without the victim's consent, (2) the trial court should have directed a verdict of acquittal because the State failed to present evidence that Penny intended to commit a crime within the victim's dwelling, and (3) the trial court should have suppressed evidence of Penny's flight following the issuance of an Amber Alert. We affirm.

1.      We disagree with Penny's argument that the State failed to present evidence that he entered the victim's home without the victim's consent. Although the victim testified Penny would have been allowed to enter the residence if he had knocked on the door instead of forcing his way inside, this circumstance did not amount to unlimited consent. *See State v. Singley*, 392 S.C. 270, 276, 709 S.E.2d 603, 606 (2011) ("[O]ur burglary laws protect an interest separate and apart from ownership: the right to be safe and secure in one's home."); *State v. Coffin*, 331 S.C. 129, 132, 502 S.E.2d 98, 99 (1998) (affirming a conviction for burglary in the first degree and stating that, although the appellant had been a guest in the victim's home, the victim "was entitled to terminate appellant's lawful possession by evicting him" before he entered the home and fatally stabbed her); *id.* at 131, 502 S.E.2d at 99 (explaining further that "[i]t is undisputed [the victim] was a person in lawful possession and that she did not consent to appellant entering the mobile home *at the time of the stabbings*" (emphasis added)).

2.      Penny further argues the trial court should have directed a verdict in his favor because the State did not offer either direct or circumstantial evidence of any crime that he intended to commit once inside the residence. We disagree. Penny correctly asserts a conviction for burglary in the second degree requires evidence that the defendant entered a dwelling with the intent to commit a crime therein. *See* S.C. Code Ann. § 16-11-312(A) (2003) ("A person is guilty of burglary in the second degree if the person enters a dwelling without consent and with intent to commit a crime therein."); *cf. State v. Pinckney*, 339 S.C. 346, 349, 529 S.E.2d 526, 527 (2000) ("First degree burglary requires evidence that the defendant *entered* a dwelling without consent and with intent to commit a crime in the dwelling."). However, contrary to Penny's contention that there was no evidence presented of any specific criminal act that he intended to commit while inside the residence, Penny's forcible entry into the victim's residence, which resulted in damage to both the storm door and the inside metal door, gave rise to an inference of his intent to commit a crime once he gained entry to the home. *See McMillian v.*

*State*, 383 S.C. 480, 487, 680 S.E.2d 905, 908 (2009) (rejecting the petitioner's argument that his plea counsel erred in advising him that intent to commit a crime could be inferred from an act of trespass); *id.* ("Certainly, a jury would have been free to disbelieve McMillian's version of events and find that he had the intent to commit a crime based on his conduct at the time of [his trespass into the victims' residence]."); *Pinckney v. State*, 368 S.C. 502, 505, 629 S.E.2d 367, 369 (2006) ("[T]here is no requirement that the intent element is satisfied only by proving an intent to commit the specific crime that is charged in the indictment as an aggravating circumstance. The only requirement is that there be intent to commit any crime at the time of entry."); *State v. Tuckness*, 257 S.C. 295, 299, 185 S.E.2d 607, 608 (1971) ("Intent is seldom susceptible to proof by direct evidence and must ordinarily be proved by circumstantial evidence, that is, by facts and circumstances from which intent may be inferred."); *State v. Peterson*, 336 S.C. 6, 7, 518 S.E.2d 277, 278 (Ct. App. 1999) ("The fact that the jury failed to convict Peterson of the sexual assault charge does not affect the validity of the burglary charge. Indeed, that fact is immaterial.").

3.      Finally, we reject Penny's arguments the trial court should have suppressed evidence of his flight following the issuance of an Amber Alert for two of his children, whom he removed from the victim's residence. Penny contends (1) there was no nexus between his flight and the charged offense of second-degree burglary and (2) evidence about the Amber Alert inappropriately suggested to the jury that he had unlawfully kidnapped his own children. We agree with Penny that "[f]light evidence is relevant when there is a nexus between the flight and the offense charged." *State v. Pagan*, 369 S.C. 201, 209, 631 S.E.2d 262, 266 (2006). However, "[t]he critical factor to the admissibility of evidence of flight is whether the totality of the evidence creates an inference that the defendant had knowledge that he was being sought by the authorities." *State v. Beckham*, 334 S.C. 302, 314, 513 S.E.2d 606, 612 (1999). "This totality test and its components assist the trial court in determining the relevance of evidence of evasive conduct, as well as in weighing the probative value of that evidence against its prejudicial effect." *State v. Martin*, 403 S.C. 19, 28, 742 S.E.2d 42, 47 (Ct. App. 2013). Here, there was a nexus between Penny's flight and the charge of burglary in the second degree. Even though the police apprehended Penny because of concern about his removal of his children from the victim's home, the removal involved his forcible entry into the dwelling, an element of the burglary charge on which he was ultimately tried and convicted. Furthermore, we hold there is no merit to Penny's contention that he was unduly prejudiced by the admission of evidence that an Amber Alert was issued. At trial, the law enforcement officer who apprehended Penny conceded

that he did not know whether the Amber Alert was valid, and defense counsel argued to the jury that "[law enforcement] thought he had taken kids that he didn't have custody of[,] which was not the case." Based on our review of the record, then, we hold mention of the Amber Alert did not cause the jury to reach a guilty verdict on an improper basis.

**AFFIRMED.**

**HUFF, A.C.J., and WILLIAMS and THOMAS, JJ., concur.**